NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-5008

NORTH HARTLAND, L.L.C.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

John S. Lopatto, III, of Washington, DC, argued for plaintiff-appellant.

Timothy P. McIlmail, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appelllee. With him on the brief were Jeanne E. Davidson, Director, and Mark A. Melnick, Assistant Director.

Appealed from: United States Court of Federal Claims

Judge Christine O.C. Miller

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-5008

NORTH HARTLAND, L.L.C.,

Plaintiff-Appellant,

v.

UNITED STATES

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in Case No. 06-CV-495, Judge Christine O.C. Miller.

_____

DECIDED: February 2, 2009

_____

Before RADER, SCHALL, and DYK, <u>Circuit Judges</u>.

RADER, <u>Circuit Judge</u>.

The United States Court of Federal Claims dismissed North Hartland L.L.C.'s (North Hartland's) case against the United States for lack of subject matter jurisdiction. North Hartland had sued the United States for breach of contract, alleging that it had a contractual right to purchase a hydroelectric plant located on the Ottaquechee River near North Hartland Lake, Vermont. Because a series of transactions left North Hartland with no contractual rights against the Government, this court affirms the trial court's finding of no privity of contract between North Hartland and the United States.

I.

Vermont Electric Generation & Transmission Cooperative, Inc. (VEG&T) originally owned and operated the North Hartland Lake hydroelectric plant. In 1996, however, VEG&T entered into a Chapter 7 bankruptcy. The bankruptcy trustee then gave full authority to direct the transfer and delivery of VEG&T's assets in the North Hartland Lake plant to the United States Department of Agriculture Rural Utilities Services (RUS), VEG&T's largest creditor.

On April 28, 1998, RUS issued a "Request for Proposal" from prospective purchasers of the plant. In response, Contech Development Company (Contech) offered RUS $2.407 million for the facility. RUS accepted Contech's offer to purchase the plant as is" via a letter contract dated September 28, 1998. The letter contract served as the contract between Contech and RUS until December 16, 1999, when the parties executed the Asset Purchase Agreement (APA). The APA listed the purchase price for the plant at $1.4 million and further contemplated a reduced sale price if closing occurred on or before March 15, 2000. The United States Bankruptcy Court for the District of Vermont approved and authorized this sale.

Despite the terms of the APA, RUS never closed the sale of the North Hartland Lake plant with Contech. Under the APA, however, Contech retained the right to purchase the plant. Contech later assigned this right to North Hartland L.L.C. of New Hampshire (North Hartland of New Hampshire). Notably, although Appellant North Hartland shares its name with North Hartland of New Hampshire, as explained below, these two North Hartlands are not the same entity. The exact date of Contech's assignment of the APA to North Hartland of New Hampshire is unclear from the

documentary evidence presented in this case; however, it appears that the assignment occurred close to the formation of the APA and the failed closing between RUS and Contech.

North Hartland of New Hampshire suffered the same fate as Contech under the APA. Indeed, according to Appellant, RUS not only refused to close on the sale to North Hartland of New Hampshire, but also invited bids on the plant in contravention of the APA.

In addition to losing the chance to purchase the hydroelectric plant, North Hartland of New Hampshire encountered organizational difficulties central to this appeal. The New Hampshire Secretary of State dissolved North Hartland of New Hampshire on November 1, 2002. North Hartland, L.L.C. v. United States, 78 Fed. Cl. 172, 175 n.4 (2007). The Secretary reinstated North Hartland of New Hampshire under the name "Vermont Generating, LLC" (VGL), effective December 9, 2004. Id. On October 6, 2004, Appellant North Hartland organized as a Virginia domestic limited-liability partnership. Id. This Virginia partnership was formed "to hold all of the equity in the soon-to-be VGL." Id.

Unable to sustain the cost and aggravation of RUS's delay, Appellant North Hartland entered into an agreement with Concord Hydro Associates (Concord) for the sale of VGL and its equity interests in the North Hartland Lake power plant to Concord. Appellant North Hartland and Concord entered an "Agreement for the Purchase and Sale Vermont Generating, LLC Equity Interests" (APS). In that agreement, North Hartland represented "that it was 'formed in the Commonwealth of Virginia on October 6, 2004, to hold all of the equity interest in and to the Vermont Generating, LLC,' and

that VGL held the right to purchase the North Hartland Lake plant, under the APA, as the assignee of [Contech]." North Hartland, 78 Fed. Cl. at 175 (quoting APS at 1, 3). North Hartland "further represented that '[t]he only assets of [VGL] are intangible contract rights relating to the North Hartland Project, including [plaintiff's] interest in the APA.'" Id. (quoting APS at 7).

Under the terms of the APA, North Hartland agreed to sell all equity interests in VGL to Concord for $465,000 plus interest. North Hartland was to "'sell and deliver to [Concord], and [Concord was to] purchase and take title to and delivery of, all equity units of [VGL's] limited liability company interests owned by [Appellant] (the 'Shares'), representing 100% of the authorized, issued, and outstanding equity interests in [VGL].'" Id. (quoting APS at 4). North Hartland was to "'prepare an assignment of Interest, in the form attached as Exhibit A, by which [Contech] and [Appellant] shall release, discharge, and assign to [Concord] all right, title or interest that either has in the [VGL] or the APA.'" Id. (quoting APS at 6). The APS also recited that "'[t]he transaction contemplated by this Agreement [was] a purchase by [Concord] and a sale by [plaintiff] of all equity interests in [VGL], which [plaintiff was to] convey to [Concord] free and clear of any claims and/or encumbrances on VGL, and free and clear of any claims or encumbrances of affiliated entities.'" Id. (quoting APS at 4). The parties completed their transaction under this agreement.

In January 2005, RUS sold the plant to Concord. North Hartland did not sue the Government for breach of contract until June 30, 2006, however, more than a year and a half after it sold VGL and its interest in the APA to Concord. Accordingly, the Government moved to dismiss North Hartland's claim pursuant to RCFC 12(b)(1) for

lack of subject matter jurisdiction. The Court of Federal Claims granted the government's motion, finding no jurisdiction under the Tucker Act. In particular, the Court of Federal Claims found that North Hartland did not show any privity of contract with the Government. Therefore, the trial court lacked jurisdiction to entertain North Hartland's claim. "Simply put, as [the Government] argues, [Appellant] sold its privity of contract with the Government to Concord and may not now assert it." Id. at 181. North Hartland timely appealed.

## II.

This court reviews the Court of Federal Claims' dismissal for lack of subject matter jurisdiction without deference. See Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir. 2002). When a Rule 12(b)(1) motion merely challenges the facial sufficiency of the pleadings to establish subject matter jurisdiction, this court takes the allegations in the pleadings as true and construes them in the light most favorable to the complainant. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). If, however, as here, the motion controverts the jurisdictional allegations in the pleadings, the movant is deemed to be challenging the factual basis for the court's jurisdiction. Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1558-59 (9th Cir. 1987). In that case, the allegations in the complaint are not controlling. KVOS v. Associated Press, 299 U.S. 269, 277-79, (1936). Thus, in this circumstance, this court accepts only uncontroverted factual allegations as true for purposes of the motion. Gibbs v. Buck, 307 U.S. 66, 72 (1939). "All other facts underlying the controverted jurisdictional allegations are in dispute and are subject to fact-finding by the district court." Cedars-Sinai Medical Center v. Watkins, 11 F.3d 1573, 1584 (Fed. Cir. 1993).

"In establishing the predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony." Id. Accordingly, this court must "scrutinize the evidence submitted by [Appellant] as support for its otherwise naked jurisdictional allegations in order to determine whether this case is indeed ripe for adjudication." Id. This court will not disturb the evidentiary rulings of the Court of Federal Claims absent an abuse of discretion. See Taylor, 303 F.3d at 1359.

III.

The Tucker Act only confers jurisdiction on the Court of Federal Claims for suits against the government involving an "express or implied contract." 28 U.S.C. §1491(a). Corollary to this rule is the maxim that the "government consents to be sued only by those with whom it has privity of contract." Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1263 (Fed. Cir. 2005) (quoting Erickson Air Crane Co. v. United States, 731 F.2d 810, 813 (Fed. Cir. 1984)). Thus, to prevail in defending against the Government's motion to dismiss, North Hartland had to come forth with evidence that it was in privity of contract with the Government. See Cedars-Sinai, 11 F.3d at 1584.

North Hartland did not present any such evidence to the Court of Federal Claims, and it likewise has not supplied this court with a basis for finding privity of contract. Indeed, even if we were to assume that North Hartland somehow was in privity with the government as a result of its VGL ownership, North Hartland voluntarily took itself out of the privity equation and extinguished its rights to sue the government when, before filing suit, it sold VGL and VGL's interest in the APA to Concord. This sale effectively eliminated any jurisdiction the Court of Federal Claims or this court might have had over

the present dispute by removing any contractual bond between the Government and North Hartland.

The excerpts from the APS agreement between Concord and North Hartland set forth above underscore this point. Through that agreement, North Hartland conveyed VGL and its equity interests in VGL to Concord "'free and clear of any claims and/or encumbrances on VGL, and free and clear of any claims or encumbrances of affiliated entities.'" North Hartland, 78 Fed. Cl. at 175 (quoting APS at 4). That agreement further conveyed "all right, title or interest" that North Hartland possessed in VGL or the APA. Id. (quoting APS at 6). These statements, and the other representations included in the APS, unequivocally reveal that North Hartland is not in privity of contract with the Government. Accordingly, the Court of Federal Claims correctly dismissed North Hartland's claim for lack of subject matter jurisdiction.

North Hartland attempts to avoid this outcome by pointing to the non-interference clause of the APS as reserving its right to sue the Government for breach of contract. That clause provides:

> 13. Non-Interference
>
> The Seller (including its owners, management member, family members, related and affiliated entities) and RUS have agreed to provide each other mutual concessions and mutual releases of liability. In the likely event RUS chooses to again require these mutual concessions from the Seller as a condition precedent to Closing under the APA, then this matter is exclusively reserved to be between the Seller and RUS, excluded from this Agreement, and all such consideration, if any, to be paid or caused to be paid by RUS is to the sole and exclusive benefit of the Seller. The Seller agrees not to pursue any claims against the RUS until after the closing of the APA.

APS at 14 (emphasis supplied). In its own words, this contract provision pertains to the situation where RUS requires additional concessions from North Hartland as a condition

precedent to closing. However, North Hartland "has not provided any evidence that RUS required such concessions upon the closing with Concord or indicated even the slightest possibility that such concessions may be required of plaintiff in the future pursuant to the APA." North Hartland, 78 Fed. Cl. at 180. Thus, despite vigorous argument to the contrary, this court detects no basis for North Hartland's argument that §13 reserved to it the right to sue the Government for the alleged breach of contract under the APA.

IV.

Accordingly, for the foregoing reasons, this court affirms the decision of the Court of Federal Claims.

AFFIRMED

COSTS

Each party shall bear its own costs.