**Ernesto BRACH, pro se, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 10–478T.**

United States Court of Federal Claims.

March 9, 2011.

Ernesto Brach, Brooklyn, NY, plaintiff pro se.

Gregory S. Knapp, U.S. Department of Justice, Washington, DC, with whom were John J. DiCicco, Acting Assistant Attorney General, Steven I. Frahm, Chief, Court of Federal Claims Section, and Mary M. Abate, Assistant Chief, Court of Federal Claims Section for defendant.

## OPINION ON MOTION TO DISMISS

FIRESTONE, Judge.

Pending before the court is the motion of the United States ("government" or "defendant") to dismiss the *pro se* complaint of the plaintiff, Ernesto Brach ("Mr.Brach"), pursuant to Rule 12(h)(3) of the Rules of the United States Court of Federal Claims ("RCFC") for lack of subject matter jurisdiction.[1] In the alternative, the government moves for judgment on the pleadings on the grounds that the doctrine of *res judicata* bars the plaintiff's complaint. In his complaint, the plaintiff alleges that his tax refund claim was erroneously denied as untimely by the Internal Revenue Service ("IRS") and in the alternative alleges that he is entitled to recovery on an account stated under which the IRS agreed that he was due a refund.[2] For the reasons discussed below, the govern-

---

1. The government's motion was filed after the government had filed an answer in this case and therefore outside of the time normally appropriate for filing a motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1).

2. On October 27, 2010, the plaintiff filed a motion to "restore the court docket," alleging that on or about October 4–5 the Clerk's office erroneously amended the court's electronic docket to reflect the government's answer as having been filed on September 27, 2010, rather than September 28, 2010. The plaintiff alleges that the Clerk's office made this change after a call from the plaintiff requesting information for why there was an inconsistency between the date of filing of September 28, 2010 and the date of service of September 27, 2010. The plaintiff argues that the docket should not have been amended, and further argues that if the docket were restored, then the government's answer, due September 27, 2010, would have been untimely filed. Moreover, the plaintiff believes that such untimely filing would merit a decision of the court to strike the defendant's answer and grant summary judgment in favor of the plaintiff. Upon close examination of the plaintiff's motion, the case docket, and the government's answer, the court finds that the physical date stamp on the government's answer clearly reflects a timely date of filing of September 27, 2010 and that the amendment to the docket by the Clerk's office was necessary in order to reflect the accurate date of filing of September 27, 2010. Accordingly, the plaintiff's motion must be **DENIED.**

ment's motion to dismiss for lack of jurisdiction is **GRANTED**.

## I. BACKGROUND

### A. The 2005 Disallowance of the Plaintiff's 1999 and 2000 Administrative Refund Claims by the IRS

The plaintiff, Mr. Brach, won $6 million in the New York State Lottery in 1990. The winnings were payable over twenty years in installments of $285,715, less withholding for federal and state taxes. The federal withholding rate was 28% of the annual installment, or $80,000. Despite winning the lottery, the plaintiff encountered financial difficulties and filed for a voluntary petition for bankruptcy in 1998. While the bankruptcy case was proceeding, on September 2, 2005, the plaintiff filed income tax returns for tax years 1999 through 2004 with the IRS, claiming a total refund due of $354,514. The refund claimed was generated by alleged overpayments in 1999 and 2000 totaling $375,881. The plaintiff then applied those overpayments toward taxes owed for the subsequent tax years for a final alleged refund due at the end of 2004 in the amount of $354,514.[3] The plaintiff had not previously filed returns for these years. In November 2005, the IRS denied the plaintiff's claims for refund of overpayments sought for tax years 1999 and 2000 pursuant to Internal Revenue Code ("I.R.C.") § 6511(a) (2006)[4] on the grounds

that they were untimely, because they were filed more than three years after the date of payment,[5] and in June 2007 imposed a lien on the plaintiff's property in the amount of $32,082.54 for unpaid taxes and penalties for tax years 2001 through 2004. The bankruptcy case was closed on June 17, 2008, and after that time the IRS resumed its examination of the plaintiff's income tax returns for 1999 through 2004.

### B. The 2008 Examination of the Administrative Refund Claim

In July 2008, an agent of the IRS contacted the plaintiff's accountant, Herschel Friedman, to obtain his signature for a Form 872 ("Consent to Extend Time to Assess Tax") to extend the time to assess income tax due for tax years 1999, 2000, 2001, 2002, 2003, and 2004 through October 15, 2008. Compl. ¶ 9 n.2. On August 21, 2008, Machelle Smith (a supervisory internal revenue agent) wrote a letter to the plaintiff's accountant "to confirm a conversation related to securing a signature on a Form 872 Consent to Extend the Time to Assess Tax from Mr. Brach" the purpose of which was "to allow adequate time for processing of the reports that were signed and submitted to [revenue agent] Howard Mostovy." Compl. Ex. 1.

The plaintiff and an IRS examiner, Howard Mostovy, signed and dated a series of IRS Forms 4549 (Income Tax Examination

---

3. The plaintiff's returns reported tax liabilities in the amounts of $24,120 for 1999, $0 for 2000, $4,594 for 2001, $7,799 for 2002, $4,674 for 2003, and $4,260 for 2004. Compl. Exs. E–J. The tax liabilities reported on the returns were assessed by the IRS on October 17, 2005, October 24, 2005, October 31, 2005, October 10, 2005, October 31, 2005, and November 7, 2005, respectively. Def.'s Mot. to Dismiss Ex. ("Def.'s Ex") 11 at A–104, Ex. 12 at A–108, Ex. 13 at A–111, Ex. 14 at A–116, Ex 15 at A–121, Ex. 16 at A–125. On his returns, the plaintiff claimed an overpayment credit or refund for each year, which were generated by claimed tax payments of $320,001 for 1999 (consisting of an $80,000 credit from 1998 and $240,001 in withholdings from 1999), $80,000 in withholdings for 2000, and carryovers of the excess as credits on the plaintiff's tax returns from year to year, resulting in a cumulative credit of $354,514 claimed as a refund on the plaintiff's 2004 return. Compl. ¶ 18, Exs. E–J. The plaintiff does not allege that

he made other payments in 2001, 2002, 2003, or 2004. Compl. ¶¶ 15–18.

4. I.R.C. § 6511(a) states, in relevant part:

Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid.
I.R.C. § 6511(a).

5. The IRS sent a notice of disallowance of the plaintiff's administrative refund claim for tax year 1999 via certified mail on November 9, 2005. Def.'s Ex. 8. The IRS sent a notice of disallowance of the plaintiff's administrative refund claim for tax year 2000 via certified mail on November 14, 2005. Def.'s Ex. 9.

Changes) for each of the tax years except 2001 on August 14, 2008 and August 15, 2008, respectively. Pl.'s Resp. Ex. R2 ("Pl.'s Ex. R2"). The forms were each headed with the descriptor "Corrected Report" and included in box 19.e. an amount of refund potentially due to the taxpayer from the IRS for that year. *Id.* For the Form 4549 pertaining to the last tax year at issue, 2004, a refund was listed in box 19.e. in the amount of $358,774.[6] *Id.*

On August 27, 2008, Ms. Smith, on behalf of William P. Marshall (the IRS Director for North Atlantic Examination), and the plaintiff's accountant, on behalf of the plaintiff under power of attorney, signed the Form 872. Def.'s Ex. 10. The form included a clause stating, "the taxpayer[ ] may file a claim for credit or refund and the [IRS] may credit or refund the tax within 6 months after this agreement ends." *Id.*

On September 29, 2008, Ms. Smith sent a letter to the plaintiff's accountant providing the results of the IRS's examination and explaining the forfeiture of the plaintiff's requested refunds as follows:

> [T]he "refunds" requested on the filed returns were unavailable and went to excess collections because the initial return generating the refund, 1999, was filed more than 3 years after the due date; due date: April 15, 2000; date filed: September 2, 2005. As a result, this eliminated any estimated tax payment to be carried forward. Additionally, the subsequent ... payment made with the 2000 tax year was also forwarded to excess collections for the same reason. Due Date: April 15, 2001; date filed: September 2, 2005. Therefore,

Mr. Brach does not have any refunds due to him and the case will be forwarded for processing.

Compl. Ex. B.

The examination was subsequently processed and, on October 15, 2008, Ms. Smith, signing on behalf of Mr. Marshall, sent a letter to the plaintiff stating, "We've completed the review of the examination of your tax return for the years [1999, 2000, 2001, 2002, 2003, and 2004]. We made no changes to your reported tax." Compl. Ex. A at 2.

More than fifteen months later, on January 19, 2010, the plaintiff's accountant sent a letter to the IRS in response to the IRS's denial of the plaintiff's claims, asserting that the plaintiff's tax refunds were erroneously denied as outside the statute of limitations because the statute of limitations for filing the plaintiff's claims had been suspended as a result of a financial disability under I.R.C. § 6511(h) (2006).[7] Compl. Ex. C. Enclosed with the letter was a statement from a medical doctor, dated January 6, 2010, certifying that a mental illness had prevented the plaintiff from managing his personal and financial affairs from December 2002 to July 2005. Compl. Exs. C, L. Also enclosed with the letter was a statement from the plaintiff, dated January 18, 2010, stating that he had no spouse or other person authorized to act on his behalf in financial matters from December 1, 2002 to July 31, 2005. *Id.*

The plaintiff filed this suit on July 23, 2010, more than four years after the 2005 disallowance of the plaintiff's 1999 and 2000 claims and more than eighteen months after the

---

6. On each of the Forms 4549, the following language appears above the plaintiff's signature: Consent to Assessment and Collection—I do not wish to exercise my appeal rights with the Internal Revenue Service or to contest in the United States Tax Court the findings in this report. Therefore, I give my consent to the immediate assessment and collection of any increase in tax and penalties, and accept any decrease in tax and penalties shown above, plus additional interest as provided by law. It is understood that this report is subject to acceptance by the Area Director, Area Manager, Specialty Tax Program Chief, or Director of Field Operations. *Id.*

7. I.R.C. § 6511(h) states in relevant part:

the running of the periods specified in [I.R.C. § 6511(a) ] shall be suspended during any period of such individual's life that such individual is financially disabled.... [A]n individual is financially disabled if such individual is unable to manage his financial affairs by reason of a medically determinable ... mental impairment of the individual which ... can be expected to last for a continuous period of not less than 12 months. An individual shall not be considered to have such an impairment unless proof of the existence thereof is furnished in such form and manner as the Secretary may require. I.R.C. § 6511(h).

2008 examination and the IRS's final decision denying the plaintiff's requested refund of amounts claimed on the grounds that the claims were not timely filed.

## II. DISCUSSION

### A. Standard of Review

Because the plaintiff is proceeding *pro se,* he is entitled to a liberal construction of his pleadings, *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (holding that *pro se* complaints should be held to "less stringent standards than formal pleadings drafted by lawyers") (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). However, all those seeking to invoke this court's subject matter jurisdiction ultimately retain the burden of establishing that the jurisdictional requirements are met. *Keener v. United States,* 551 F.3d 1358, 1361 (Fed.Cir.2009) (citing *Rocovich v. United States,* 933 F.2d 991, 993 (Fed.Cir.1991)); *Bernard v. United States,* 59 Fed.Cl. 497, 499 (2004) ("This latitude, however, does not relieve a *pro se* plaintiff from meeting jurisdictional requirements."), *aff'd,* 98 Fed.Appx. 860 (Fed.Cir.2004).

■ The Tucker Act establishes this court's jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). However, the Tucker Act does not confer any substantive rights upon a plaintiff. *United States v. Testan,* 424 U.S. 392, 398–401, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). A plaintiff must establish an independent substantive right to money damages from the United States, that

is, a money-mandating source within a contract, regulation, statute or constitutional provision itself, in order for the case to proceed. *Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.,* 525 F.3d 1299, 1306 (Fed. Cir.2008).

When a party has moved to dismiss for lack of subject matter jurisdiction, the alleged facts in the complaint are viewed as true, and "if the facts reveal any reasonable basis upon which the non-movant may prevail, dismissal is inappropriate." *Pixton v. B & B Plastics, Inc.,* 291 F.3d 1324, 1326 (Fed. Cir.2002) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)); *see N. Hartland, L.L.C. v. United States,* 309 Fed.Appx. 389, 392 (Fed.Cir.2009) (the court "takes the allegations in the pleadings as true and construes them in the light most favorable to the complainant"). The court may also look beyond the pleadings and inquire into jurisdictional facts to determine whether jurisdiction exists. *Cedars–Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1584 (Fed.Cir.1993); *N. Hartland,* 309 Fed.Appx. at 392.

### B. Summary of the Parties' Arguments

In his complaint, the plaintiff alleges that he is owed a refund from the government of $354,514 plus statutory interest for personal income taxes paid for tax years 1999, 2000, 2001, 2002, 2003, and 2004. The government has moved to dismiss the complaint for lack of subject matter jurisdiction. Citing I.R.C. § 6532(a) (2006), the government argues the statute of limitations has passed for the plaintiff's 1999 and 2000 claims because the suit was filed more than two years after the November 2005 disallowance of those claims and because the 2008 reexamination did not re-open the limitations period.[8] In addition,

---

8. I.R.C. § 6532(a)(1) states:

No suit or proceeding under [I.R.C. § 7422(a) (2006) ] for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time, *nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of*

*the part of the claim to which the suit or proceeding relates.*
I.R.C. § 6532(a)(1) (emphasis added). I.R.C. § 7422(a) provides, in turn:
No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected,

the government argues that the court lacks jurisdiction over the plaintiff's refund claims for 2001, 2002, 2003, and 2004 because the plaintiff did not fully pay taxes in those years and therefore his claim is barred by the "full payment rule." *See Flora v. United States*, 362 U.S. 145, 150, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960); *McNeil v. United States*, 293 Fed. Appx. 758, 760 (Fed.Cir.2008) ("[T]he Court of Federal Claims has jurisdiction under the Tucker Act for actions seeking a refund of taxes only when the plaintiff has satisfied the 'full payment rule.' Under the 'full payment rule,' a taxpayer must fully pay disputed taxes and seek a refund from the IRS before filing suit.") (citing *Shore v. United States*, 9 F.3d 1524, 1526 (Fed.Cir.1993)).[9]

In response, the plaintiff argues that his suit is not untimely because (1) his time for filing was extended by agreement with the IRS when he signed the Form 872 Consent to Extend Time to Assess Tax in August 2008; and (2) his time for filing should have been extended due to financial disability from December 2002 through July 2005 pursuant to I.R.C. § 6511(h) because of a mental illness that rendered him unable to manage his personal and financial affairs during that period.

■ As an alternative theory of recovery, the plaintiff alleges that the Form 4549 documents signed by both an IRS examiner and the plaintiff during the 2008 reexamination constituted an "account stated"[10] under which the IRS agreed that he was due a refund in the amount of $358,774.

## C. Statutory Framework

As noted above, *supra* notes 5, 8–9, there are strict rules governing the filing of lawsuits for federal income tax refund before the courts and the filing of administrative claims for a federal income tax refund with the IRS. They can be briefly explained as follows.

■ A jurisdictional prerequisite of all federal income tax refund claims under the

---

until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof. I.R.C. § 7422(a). The only statutory exception to the two-year filing requirement of I.R.C. § 6532(a)(1) is contained in subsection (a)(2), which allows for extension of the time when agreed to in writing between the taxpayer and the IRS. I.R.C. § 6532(a)(2) states: "The 2-year period prescribed in paragraph (1) shall be extended for such period as may be agreed upon in writing between the taxpayer and the Secretary." I.R.C. § 6532(a)(2). Such agreement is not "effective until signed by a district director, a director of an internal revenue service center, or an assistant regional commissioner." 26 C.F.R. § 301.6532–1(b) (2010). The IRS's mere consideration or reconsideration of a taxpayer's claim after mailing a notice of disallowance does not extend the limitations period for filing suit. I.R.C. § 6532(a)(4) ("Any consideration, reconsideration, or action by the Secretary with respect to such claim following the mailing of a notice by certified mail or registered mail of disallowance shall not operate to extend the period within which suit may be begun.").

9. In the alternative, the government moves for judgment on the pleadings on the grounds that the doctrine of *res judicata* bars the plaintiff's complaint because his claims are precluded by the effect of a settlement and final judgment in his bankruptcy case. While the bankruptcy case was proceeding, the plaintiff filed the tax returns at issue in this case. The IRS objected to the plaintiff's liquidation plan on the grounds that it had not had an opportunity to fully review the returns. Def.'s Ex. 4. After completing its audit of the plaintiff's tax returns, the IRS withdrew its objection to the plaintiff's liquidation plan. Def.'s Ex. 5. The IRS entered into a stipulation of settlement with the plaintiff, approved by the bankruptcy court on February 2, 2007, in which the plaintiff waived "any claim to refunds arising out of payments made in 1997, 1998, 1999, and 2000 on behalf of Debtor by the New York State Division of the Lottery to the Commissioner of the IRS." Def.'s Ex. 6. at A–77 to A–81. The IRS entered into a second stipulation of settlement with the plaintiff, approved by the bankruptcy court on June 19, 2007, in which the plaintiff agreed to "not make any claim [other than $80,000 for tax year 1996] for any refunds, claims, or assignments from the [IRS] for tax years 1995 to 2006." Def.'s Ex. 7. at A–86 to A–89. The government argues that these stipulations of settlement preclude the plaintiff from trying his claims for refund for the tax years 1999 through 2004 in this court.

10. As discussed in greater detail *infra* Part II.F., an "account stated" claim is a claim based on an implied contract and may be filed within six years of the agreement. An "account stated" claim arises when the government agrees with the taxpayer that he has overpaid his taxes in a definite amount and communicates to him its intention to repay. *West Publ'g Co. Emps.' Preferred Stock Ass'n v. United States*, 198 Ct.Cl. 668, 675 (1972).

Tucker Act is the claimant's full payment of the tax liability, penalties, and interest at issue. *See Flora,* 362 U.S. at 150, 80 S.Ct. 630; *McNeil,* 293 Fed.Appx. at 760. A taxpayer seeking recovery of income taxes must also comply with the applicable provisions of the Internal Revenue Code ("Code"). *See United States v. Clintwood Elkhorn Min. Co.,* 553 U.S. 1, 4, 128 S.Ct. 1511, 170 L.Ed.2d 392 (2008).

█ If a taxpayer wishes to file suit in court, the taxpayer must comply with the statute of limitations contained in I.R.C. § 6532(a)(1), which requires a suit to be filed within two years after the IRS disallows the plaintiff's claim for refund and mails by certified or registered mail a notice of the disallowance. I.R.C. § 6532(a)(1). The only statutory exception to the two year filing requirement is contained in I.R.C. § 6532(a)(2), which allows for extension of time for filing suit when agreed to in writing by the taxpayer and "a district director, a director of an internal revenue service center, or an assistant regional commissioner" of the IRS. 26 C.F.R. § 301.6532–1(b). The IRS's mere consideration or reconsideration of a taxpayer's claim after mailing a notice of disallowance does not extend the limitations period for filing suit. I.R.C. § 6532(a)(4).

█ Separate from the time for filing a suit in court, the Code also strictly limits the time within which a taxpayer may file an administrative claim for refund with the IRS

in the first instance. The Supreme Court has recognized that the time limit for filing such an administrative refund claim with the IRS is established by I.R.C. § 6511(a). *Clintwood,* 553 U.S. at 4, 128 S.Ct. 1511.[11] A court may not equitably toll the statutory time limitations set forth in I.R.C. § 6511 for filing administrative tax refund claims, *United States v. Brockamp,* 519 U.S. 347, 348, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997), but the Code does provide certain statutory bases for tolling the time for filing administrative tax refund claims. For instance, under I.R.C. § 6511(h), the statute of limitations for filing a claim with the IRS may be suspended if (subject to certain conditions) a taxpayer is deemed "financially disabled" and no other person is authorized to act on his behalf.[12]

### D. The Plaintiff's Claim for Refund of Income Taxes Paid for 1999 and 2000 Are Time–Barred under I.R.C. § 6532(a)

█ The government has moved for dismissal of the plaintiff's refund claims for tax years 1999 and 2000 for lack of subject matter jurisdiction because, regardless of whether the plaintiff filed a timely claim for refund with the IRS, the plaintiff did not file his complaint with this court within two years of the IRS's disallowance of those claims in November 2005, as required by I.R.C. § 6532(a)(1).[13] The plaintiff contends that the

---

11. Compliance with the timely filing requirements of I.R.C. § 6511(a) also presents an additional jurisdictional requirement to filing suit in court. The Supreme Court has read the plain language of I.R.C § 7422(a) as strictly requiring a taxpayer seeking a refund for "any ... unlawfully assessed tax, to file a timely administrative refund claim before bringing suit against the Government." *Clintwood,* 553 U.S. at 4, 14, 128 S.Ct. 1511 ("Unless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund ... may not be maintained in any court." (quoting *United States v. Dalm,* 494 U.S. 596, 602, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990) (same))).

12. Revenue Procedure ("Rev.Proc.") 99–21, 1999–17 I.R.B. 18, describes the information that is required under I.R.C. § 6511(h)(2)(A) in order to request suspension of the period of limitations under I.R.C. § 6511 for claiming a credit or refund of tax due to an individual taxpayer's financial disability. Rev. Proc. 99–21 § 1. A

detailed description of the statements that are to be submitted with a taxpayer's claim for credit or refund of tax to claim financial disability for purposes of I.R.C. § 6511(h) is set forth in Rev. Proc. 99–21 § 4.

13. The plaintiff contends that he never received the government's notices of disallowance via certified mail as required by I.R.C. § 6532(a) (requiring a notice of disallowance to be sent by certified mail or registered mail) and that the government must provide postal receipts or delivery records showing that the letters were received or actually mailed. The government argues that it has provided a copy of the notice of disallowance of the plaintiff's claim for 2000, dated November 14, 2005, filed with its motion to dismiss as Defendant's Exhibit 9. The notice is marked "certified mail" and lists a 20-digit number that the government contends is consistent with the numbers used by the United States Postal Service on certified mail labels. Def.'s Ex

two-year limitations period of I.R.C. § 6532(a)(1) for filing suit in this court was extended pursuant to I.R.C. § 6532(a)(2) by written agreement between the plaintiff and the IRS through the Form 872 Consent to Extend Time to Assess Tax signed by Ms. Smith on behalf of the IRS Director for North Atlantic Examination and the plaintiff's accountant in August 2008. The government argues that a Form 872 signed by the Director for North Atlantic Examination and the plaintiff's accountant could not extend the time period for filing the plaintiff's suit after the two-year period expired in November 2007 and merely represented the kind of consideration or reconsideration by the IRS that cannot operate to extend the period within which suit may be begun. *See* I.R.C. § 6532(a)(4).

■ The court agrees with the government. The only exception from the strict filing deadline of I.R.C. § 6532(a)(1) is found in I.R.C. § 6532(a)(2), which allows for a district director, a director of an internal revenue service center, or an assistant regional commissioner of the IRS and the taxpayer to enter into a written agreement to extend the statute of limitations. *See* 26

C.F.R. § 301.6532–1(b). The standard IRS form for executing such an agreement is expressly titled Form 907 Agreement to Extend the Time to Bring Suit. *See Sierra Pac. Res. & Subsidiaries v. United States*, 56 Fed.Cl. 366, 369 (2002); *Crompton Corp. v. United States*, 2003 WL 21979104, at *3 (Fed.Cl.2003). The Federal Circuit, relying on the Supreme Court's holding in *Brockamp*, determined that, like I.R.C. § 6511, I.R.C. § 6532 does not contain an implicit equitable exception. *See RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461–62 (Fed.Cir.1998) ("[I.R.C. § ] 6532(a) sets forth its limitations in a detailed, technical manner.... It prescribes a particular process for extending the two year period in subsection (2), and this strongly implies that there are no other exceptions to the statutory period."). "Moreover, subsection (4) states that any further action taken by the [IRS] after a notice of disallowance is mailed to the taxpayer does not operate to extend the statutory period." *Id.* The IRS has issued a revenue ruling that it cannot extend the two-year period after it has expired. *See* Rev. Rul. 71–57, 1971–1 C.B. 405. However, the Eighth Circuit has distinguished the IRS's ruling to find that a Form 907 Agreement to

9. The government also asserts that it has provided corroborating evidence of the date of mailing through the relevant Form 4340 Certificate of Assessments, filed with its motion to dismiss as Defendant's Exhibit 12. The certificate lists a "claim disallowed" entry dated November 28, 2005. Def.'s Ex 12 at A–108. The government has also obtained the declaration of an employee from the IRS office that issued the notices, who states that the notices attached to the government's motion are consistent with the form used by the office, that it is the practice of the office to issue all such notices by certified mail, and that it is common for entries on a Certificate of Assessment to be dated two weeks after an actual date of mailing. Def.'s Reply Ex. 17. Therefore, the government asks that this court accept Defendant's Exhibit 9 as evidence of the date of mailing of the notice of disallowance for jurisdictional purposes. In response, the plaintiff asserts that he never saw the letter before being served with the government's motion. The parties have made identical arguments about the notice of disallowance of the plaintiff's claim for 1999, dated November 7, 2005, filed as Defendant's Exhibit 8, and the relevant Form 4340 Certificate of Assessments, filed with its motion to dismiss as Defendant's Exhibit 11, listing a "claim disallowed" entry dated November 21, 2005. Def.'s Ex 11 at A–104.

IRS administrative files are generally "presumed to be true, accurate, and correct." *Harris v. United States*, 44 Fed.Cl. 678, 682 (1999); *see Rocovich*, 933 F.2d at 994 ("A Certificate of Assessments and Payments is routinely used to prove that a tax assessment has in fact been made."); *Intersport Fashions W. v. United States*, 84 Fed.Cl. 454, 458 (2008) ("A Certificate of Assessments and Payments, also referred to as Form 4340, is presumptive proof of a valid assessment.") (internal quotation omitted); *Western Mgmt. v. United States*, 45 Fed.Cl. 543, 549 (2000) (it is "well established that a tax assessment is presumptively correct and that the taxpayer bears the burden of persuasion that the Commissioner's assessment is erroneous"). The plaintiff has offered no evidence to rebut this presumption aside from an assertion that he never saw the letters before being served with the government's motion. Therefore, for jurisdictional purposes the court will accept Defendant's Exhibit 9 as evidence that the notice of disallowance of the plaintiff's claim for 2000 was mailed by certified letter on November 14, 2005. By the same reasoning, for jurisdictional purposes the court will accept Defendant's Exhibit 8 as evidence that the notice of disallowance of the plaintiff's claim for 1999 was mailed by certified letter on November 7, 2005.

Extend the Time to Bring Suit entered into by the IRS and a taxpayer was effective even though the two-year period for bringing suit had expired prior to the agreement date. *See Kaffenberger v. United States,* 314 F.3d 944, 953 (8th Cir.2003). Nevertheless, in this case, the plaintiff has not alleged that a Form 907 Agreement to Extend the Time to Bring Suit was ever signed by the IRS and the plaintiff, but rather that a Form 872 Consent to Extend Time to Assess Tax was signed in August 2008, more than eight months after the period for filing suit had expired. The court finds that the plaintiff's alleged agreement does not operate to extend the time for filing suit in this court.[14] Pursuant to I.R.C. § 6532(a) the time for filing suit expired in November 2007, two years after the mailing of the notices of disallowance by the IRS, and more than two years before the plaintiff filed this suit. Accordingly, the plaintiff's refund claims for 1999 and 2000 must fail for lack of jurisdiction.

■ In order to salvage jurisdiction, the plaintiff contends that the times established by I.R.C. § 6511(a) for filing his claims with the IRS were tolled from December 2002 through July 2005 because he was financially disabled pursuant to I.R.C. § 6511(h) due to a period of mental illness. The plaintiff argues that the IRS decisions to disallow his claims for 1999 and 2000 in November 2005 were erroneous because they relied on the mistaken presumption that the plaintiff was out of time to file his claims with the IRS in September 2005, and so too would the court be mistaken in dismissing his suit for lack of jurisdiction.

However, the plaintiff is incorrect in his belief that I.R.C. § 6511(h) acts to extend the limitations period for filing suit in court under I.R.C. § 6532(a). I.R.C. § 6511(h) acts to extend the limitations period for filing a refund claim with the IRS under I.R.C. § 6511(a). Even if the court takes the plain-

tiff's alleged facts as true that he suffered from an impairment that qualified him to claim an extension of time to file his refund claims with the IRS under I.R.C. § 6511(h) when he filed his refund claims on September 2, 2005, and further takes as true that the plaintiff satisfied the requirements of IRS Rev. Proc. 99–21 when he filed those claims, the time for filing a suit for refund in this court remained governed by I.R.C. § 6532(a). As previously stated, pursuant to I.R.C. § 6532(a) the time for filing suit expired in November 2007, two years after the mailing of the notices of disallowance by the IRS, and more than two years before the plaintiff filed this suit. Accordingly, the plaintiff's refund claims for 1999 and 2000 must be dismissed for lack of jurisdiction.

**E. The Plaintiff's Claims for Refund for 2001, 2002, 2003, and 2004 Must Be Dismissed for Lack of Jurisdiction Because the Plaintiff has Not Fully Paid the Taxes Assessed for Those Years**

As previously stated, a jurisdictional prerequisite of federal income tax refund suits under the Tucker Act is the taxpayer's full payment of the tax liability, penalties, and interest at issue. *See Flora,* 362 U.S. at 150, 80 S.Ct. 630; *McNeil,* 293 Fed.Appx. at 760. The government argues that the court lacks subject matter jurisdiction over the plaintiff's refund claims for tax years 2001, 2002, 2003, and 2004 because the plaintiff has not fully paid the taxes assessed for those years. The plaintiff contends that his alleged overpayments from 1999 and 2000 should have been rolled forward into subsequent years thereby providing full payment for the taxes assessed for those years. The plaintiff does not dispute that he made no other payments toward his liability for tax years 2001, 2002, 2003, or 2004 prior to filing this suit.

■ The government has provided Certificates of Assessments and Payments for each

---

**14.** To the extent the plaintiff believes that the Forms 4549 (Income Tax Examination Changes) signed by the plaintiff and an IRS tax examiner meet the criteria for a statutory exception of time to file suit in court, that argument must also fail. Like the Form 872, the Forms 4549 were signed in August 2008, more than eight months after the

time period for filing suit had expired. Moreover, an IRS examiner alone cannot bind the IRS to an extension of time to file suit. Indeed, the Forms state that they are "subject to acceptance by the Area Director, Area Manager, Specialty Tax Program Chief, or Director of Field Operations." Pl.'s Ex R2.

of the tax years in question, indicating that as of September 1, 2010, over a month after the filing of this refund suit, the plaintiff owed assessed tax in the amounts of $4,594.00 for 2001; $7,799.00 for 2002; $4,674.00 for 2003; and $4,260.00 for 2004. It is well established that a tax assessment is presumptively correct and that the taxpayer bears the burden of proving that the IRS's assessment is erroneous. *See Rocovich*, 933 F.2d at 994 ("A Certificate of Assessments and Payments is routinely used to prove that a tax assessment has in fact been made."); *Intersport Fashions W.*, 84 Fed.Cl. at 458 ("A Certificate of Assessments and Payments, also referred to as Form 4340, is presumptive proof of a valid assessment."). The plaintiff's only alleged theory of payment for the tax years 2001, 2002, 2003, and 2004 relies on this court's jurisdiction to review and overturn the IRS's disallowance of the plaintiff's claims for refund for 1999 and 2000. However, as the court has previously determined, it lacks jurisdiction over those claims. Accordingly, the plaintiff's refund claims for 2001, 2002, 2003, and 2004 must fail for lack of jurisdiction.

### F. The Plaintiff's Account Stated Theory

As an alternative theory to his claim for refund, the plaintiff alleges that the IRS Forms 4549 (Income Tax Examination Changes) dated August 15, 2008 and signed by Mr. Mostovy (an IRS examiner) and the plaintiff, constituted an account stated under which the IRS agreed that the plaintiff was due a refund in the amounts computed thereon. Pl.'s Resp. 11–18, Ex. R2. The plaintiff alleges that the August 21, 2008 letter from Ms. Smith, confirming a conversation related to securing a signature on a Form 872 consent to extend the time to assess tax from the plaintiff for the tax years in question, the purpose of which was "to allow adequate time for processing of the reports that were signed and submitted to [Mr. Mostovy]," provides additional evidence of the intent of the IRS to allow the plaintiff's refund claims

through an account stated. *See* Compl. n.2, Ex. 1; Def.'s Ex. 10.[15]

The government contends that the plaintiff's account stated theory cannot serve as a basis for jurisdiction because the IRS examiner that signed the forms could not bind the IRS. The government argues that the Forms 4549 reflected the IRS examiner's computation of the amount of refund that would be due, were the IRS to allow the plaintiff's claims in full. Def.'s Resp. to Pl.'s Am. Sur–Reply 2–3. The IRS examiner cannot, however, bind the IRS. Indeed, the Forms state that they are "subject to acceptance by the Area Director, Area Manager, Specialty Tax Program Chief, or Director of Field Operations." Pl.'s Ex R2. The government cites Plaintiff's Exhibit B (letter to the plaintiff after the examination that explains that the refunds requested for 1999 and 2000 were unavailable) as further evidence that there was no agreement between the plaintiff and the government to refund the taxes. Def.'s Resp. to Pl.'s Am. Sur–Reply 3. The plaintiff argues that under his theory Exhibit B is evidence of the government's breach of the August 15, 2008 agreement. Pl.'s Sur–Reply to Def.'s Mot. to Dismiss 15. The court agrees with the government.

An account stated claim is a rare exception to the general rule that tax refund suits must follow the refund claim precondition to suit. *West Publ'g*, 198 Ct.Cl. at 675. "[T]he so-called suit on an 'account stated' ... does not require a refund claim and can be brought within the over-all six-year limitations span." *Id.* at 675. To constitute an account stated:

> the government must have agreed with the taxpayer that he has overpaid his taxes in a definite amount, and must have communicated to him its intention to repay. The action is based on the common law concept that an implied contract arises when a debtor (the [IRS]) submits to a creditor (the taxpayer) a statement of the final balance due on an account and the creditor

**15.** The plaintiff submitted Plaintiff's Exhibit R2 as an attachment to his response to the government's motion to dismiss. Because the plaintiff is proceeding *pro se* and because he referenced the alleged agreement in his initial complaint, if only in a footnote, in the interest of justice the court will review Plaintiff's Exhibit R2 for jurisdictional purposes. *See supra* n.3.

agrees to accept the proposed balance to close the account.

*Id.* The rationale for dispensing with the timely refund claim precondition to filing suit is that the government "has already had the chance to pass on the plaintiff's claim and has made a definite decision in his favor; this previous opportunity for the [IRS] to correct its error-an opportunity which it has used-makes a refund claim meaningless." *Id.* at 676.

As a rare exception to the refund claim precondition, the account stated exception is also narrowly construed, and a court is warranted in looking closely to see whether the government has definitively and finally agreed to refund the precise amount claimed. *West Publ'g*, 198 Ct.Cl. at 676. ("The Supreme Court has been very strict in insisting that, before the concept of an account stated can be used, it be shown beyond peradventure that the [g]overnment has in fact agreed with, and communicated to, the taxpayer its intention to pay a stated sum.") (citing, *inter alia, United States v. A.S. Kreider Co.*, 313 U.S. 443, 448–49, 61 S.Ct. 1007, 85 L.Ed. 1447 (1941) (no account stated in certificate of overassessment saying that a sum had in fact been overpaid but refund was time-barred)). A court should also be wary of expanding the concept of an account stated beyond the narrow confines that the Supreme Court has framed for it. *Id.* at 677.

In *West Publ'g*, after looking closely to see whether the IRS had definitively and finally agreed to refund the precise amount claimed, the Court of Claims rejected the plaintiff's argument that a signed Form 870–AD [16] constituted an account stated, finding that an account stated was plainly not present where the government had "never agreed that it owe[d] the plaintiff the sum for which the

suit [wa]s brought, or any sum at all." *Id.* at 676.

■ Here, the plaintiff has alleged (1) that the Forms 4549 signed in August 2008 constitute an agreement with the government that he overpaid his taxes in a definite amount, and (2) that both the IRS examiner's signature on the forms and the August 21, 2008 letter are communications of the government's intention to repay. If either element proves false, then the plaintiff's account stated theory must fail.

Upon a close examination of the Forms 4549 and the subsequent letters issued by the IRS to the plaintiff and his accountant, the court finds that the documents fail to demonstrate that the government definitively and finally agreed to refund the precise amount claimed. Rather, the Forms were prepared by an IRS tax examiner, subject to "any increase in tax and penalties" and "any decrease in tax and penalties" and most importantly "subject to acceptance by the Area Director, Area Manager, Specialty Tax Program Chief, or Director of Field Operations." Pl.'s Ex R2. The later actions of the IRS examiner's supervisors—including the determination after examination of the corrected reports that the plaintiff did not have any refunds due to him and the subsequent decision by the Area Director to make no changes to the plaintiff's reported tax after completing review of the examination—clearly demonstrate that the IRS never agreed to refund the amounts claimed. Compl. Ex. B, A p. 2. The plaintiff has not "shown beyond peradventure that the [g]overnment has in fact agreed with, and communicated to, the taxpayer its intention to pay a stated sum." *West Publ'g*, 198 Ct.Cl. at 676. Accordingly, the plaintiff's account stated claim must fail as a basis for this court's jurisdiction.[17]

---

**16.** The Court of Claims described then Form 870–AD as follows:

> The document is, on its face, an offer by the taxpayer to waive the statutory restrictions on assessments and collection and to consent to the assessment and collection of the stated deficiencies. Once accepted by the Service, no further deficiencies will be assessed (absent fraud, malfeasance, mathematical error and certain other equitable exceptions) and interest will no longer run. In exchange, the taxpayer

agrees not to file a claim for refund for the taxable period to which the form relates.... The form also provides: "The execution and filing of this offer will expedite the adjustment of your tax liability. It is not, however, a final closing agreement ... nor does it extend the statutory period of limitations for refund, assessment, or collection of the tax."
> *Id.* at 672.

**17.** Having found that it lacks subject matter jurisdiction over the complaint, the court does not

## III.  CONCLUSION

For the reasons stated above, the defendant's motion to dismiss the plaintiff's complaint is **GRANTED** and the complaint is **DISMISSED** for lack of subject matter jurisdiction.  The Clerk is directed to enter judgment accordingly.  Each party shall bear its own costs.

**IT IS SO ORDERED.**

reach the government's argument in the alternative for judgment on the pleadings on the grounds that the doctrine of *res judicata* bars the plaintiff's complaint.