NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ERNESTO BRACH,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2011-5088

---

Appeal from the United States Court of Federal Claims in case no. 10-CV-478, Judge Nancy B. Firestone.

---

Decided: October 12, 2011

---

ERNESTO BRACH, of Brooklyn, New York, pro se.

ROBERT J. BRANMAN, Attorney, Tax Division, United States Department of Justice, of Washington, DC, for defendant-appellee. With him on the brief were GILBERT S. ROTHENBERG, Acting Deputy Assistant Attorney General, MICHAEL J. HAUNGS and ROBERT J. BRANMAN, Attorneys.

---

Before NEWMAN, CLEVENGER, and O'MALLEY, *Circuit Judges*.

CLEVENGER, *Circuit Judge*.

This appeal, brought by taxpayer Ernesto Brach *pro se*, concerns his claim that the Internal Revenue Service ("the IRS") promised to pay him a tax refund and his attempt to recover that amount on a contract theory. The Court of Federal Claims dismissed Mr. Brach's case for lack of subject matter jurisdiction. *Brach v. United States*, 98 Fed. Cl. 60 (Mar. 9, 2011) [hereinafter *Dismissal Opinion*]. We disagree that the Court of Federal Claims lacked subject matter jurisdiction, but nevertheless affirm because Mr. Brach failed to state a claim upon which relief could be granted.

I

Mr. Brach claims he overpaid his taxes in 1999 and 2000 and seeks to recover the balance allegedly owed him. He filed his 1999 return roughly five and a half years late. In that return, Mr. Brach claimed a 1999 tax overpayment of about $296,000. But he did not request a refund. Instead, Mr. Brach asked that his 1999 overpayment balance be applied to his tax liability for 2000—which return he had also not timely filed, but instead filed simultaneously with the 1999 return. Mr. Brach's 2000 return claimed further tax overpayment (bringing the total claimed overpayment to over $370,000), but again carried the balance forward to 2001. This same pattern repeated for tax years 2001, 2002, 2003, and 2004. While Mr. Brach did not claim overpayment in these later years, he asked that his tax liability be paid from the balance remaining from his claimed overpayments in 1999 and 2000. None of the 1999–2004 returns was filed on time; all were filed on September 2, 2005. In the 2004 return, Mr. Brach asked the IRS to refund the remaining claimed

balance, which was $354,514.  *See* 1999–2004 Form 1040 Docs., J.A. 39–50.

In November 2005 the IRS denied Mr. Brach's request.  Because his claims for overpayments in 1999 and 2000 were filed more than three years after the payments were allegedly made, the IRS deemed the claims time-barred.  *See* I.R.C. § 6511(a) (2000).

We move forward to mid-2008.  At that time, Mr. Brach's accountant, Herschel Friedman, was in communication with an IRS agent named Howard Mostovy and was continuing to press Mr. Brach's refund claim.  In August of that year, Mr. Friedman and Mr. Mostovy signed five Form 4549 documents, titled "Income Tax Examination Changes," one for each of tax years 1999, 2000, and 2002–2004.  These forms laid out a tax accounting that essentially matched the claims Mr. Brach had made in his late-filed tax returns for those years (though they sought a slightly larger final refund).  Form 4549 Docs., J.A. 92–99.  Shortly thereafter, Mr. Mostovy's supervisor Machelle A. Smith wrote to Mr. Friedman and indicated that an extension of time was needed "to allow adequate time for processing of the reports that were signed and submitted to RA Howard Mostovy."  Ltr. to H. Friedman fr. M. Smith (Aug. 21, 2008), J.A. 34.  With authority from Mr. Brach, Mr. Friedman signed the form consenting to an extension of time.  Ms. Smith also signed.  Form 872, J.A. 64.

About a month later, Ms. Smith wrote back to Mr. Friedman.  She stated that Mr. Brach had forfeited any refund that might otherwise be due him from the alleged 1999 and 2000 overpayments by filing his returns for those years more than three years late.  Ltr. to H. Friedman fr. M. Smith (Sept. 29, 2008), J.A. 36.

At first, there was no response from either Mr. Brach or Mr. Friedman. Then, in January 2010, Mr. Friedman wrote back. Citing section 6511(h) of the Tax Code, Mr. Friedman argued that the three year limitations period for filing returns did not apply to Mr. Brach because until 2005 Mr. Brach was suffering from mental illness that prevented him from managing his personal and financial affairs. Ltr. to M. Smith fr. H. Friedman (Jan. 19, 2010), J.A. 37.

On July 23, 2010, Mr. Brach filed suit in the Court of Federal Claims for $354,514, the amount he computed as his refund on his 2004 return.

The government moved to dismiss. It argued that irrespective of the provisions of section 6511(h), the claims to overpayment in 1999 and 2000 were time-barred by section 6532(a) of the Tax Code because Mr. Brach had failed to file suit within two years of the date the IRS mailed Mr. Brach notice that his claim had been disallowed (i.e., November 2005). It also argued that the 2001, 2002, 2003, and 2004 claims should be dismissed because Mr. Brach had not fully paid his taxes for those years, which was a jurisdictional prerequisite to suing for a refund. *See Flora v. United States*, 352 U.S. 145, 150 (1960) (articulating the "full payment rule").

In his response brief, Mr. Brach made various arguments that his refund claims should not be dismissed. Notably for this appeal, he also added a new argument: that the Form 4549 documents, signed by Mr. Friedman and Mr. Mostovoy, and referred to by Ms. Smith in her letter, created a contract by which the IRS agreed to pay Mr. Brach his entire requested refund. *See* Brach Opp. to Gov't Mot. Dismiss, Dkt. #12, *Brach v. United States*, No. 10-478, at 11–18 (Fed. Cl. Dec. 7, 2010) [hereinafter Brach December 7 Brief].

The Court of Federal Claims sided with the government and dismissed Mr. Brach's action for lack of subject matter jurisdiction. It held Mr. Brach's 1999 and 2000 refund claims time-barred under I.R.C. § 6532(a)(1). *Dismissal Op.*, 98 Fed. Cl. at 67–68. It held Mr. Brach's claims concerning the later returns barred by the "full payment" rule. *Id.* at 68–69. And it rejected Mr. Brach's attempt to style his case as a contract action (which would have had a longer limitations period). *Id.* at 69–70. Mr. Brach timely appealed. This court has jurisdiction over appeals from the Court of Federal Claims. 28 U.S.C. § 1295(a)(3).

II

This court reviews the Court of Federal Claims' dismissal for lack of subject matter jurisdiction without deference. *Pixton v. B & B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed. Cir. 2002).

Mr. Brach argues that the Court of Federal Claims erred in holding that he failed to make out a basis for the court's exercise of jurisdiction. He contends that the Form 4549 documents signed by his accountant and by Mr. Mostovy created an enforceable contract, and that the Court of Federal Claims has authority to adjudicate his claims arising under that contract.[1]

The Court of Federal Claims has jurisdiction under the Tucker Act to hear claims against the United States founded on an "express or implied contract." *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1324 (Fed. Cir.

---

[1] Because Mr. Brach does not argue there was any error in the Court of Federal Claims' conclusions that § 6532(a)(1) of the Tax Code time-barred his 1999 and 2000 tax refund requests, and that the full payment rule barred his other refund claims, we do not take up those portions of the court's dismissal order.

1997); *see also* 28 U.S.C. § 1491(a)(1) (2006).  A plaintiff before the Court of Federal Claims bears the burden of establishing that the court has jurisdiction, but can meet this burden by careful pleading.  "A well-pleaded allegation in the complaint is sufficient to overcome challenges to jurisdiction." *Trauma Serv. Grp.*, 104 F.3d at 1321.

In this case, Mr. Brach's complaint does not expressly describe any contract claim, but his brief opposing dismissal does.  *See* Brach Dec. 7 Br. at 11–18.  The Court of Federal Claims, in light of Mr. Brach's *pro se* status, consented to consider the claims in Mr. Brach's response brief as a possible basis for jurisdiction, and we will do the same.  *See Dismissal Op.*, 98 Fed. Cl. at 69 n.15; *see also Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007) ("Where, as here, a party appeared *pro se* before the trial court, the reviewing court may grant the *pro se* litigant leeway on procedural matters, such as pleading requirements.").

Reviewing the Brach December 7 Brief, we disagree that the contract allegations therein do not invoke the Court of Federal Claims' subject matter jurisdiction.  To invoke the court's jurisdiction, all that was required of Mr. Brach was to allege the existence of a contract as a basis for relief.  *Gould, Inc. v. United States*, 67 F.3d 925, 929 (Fed. Cir. 1995).  He met that test.  His response brief alleged the existence of an agreement between himself and the IRS "that Ernesto Brach was entitled to and was going to receive his claimed tax refunds."  Brach Dec. 7 Br., at 16.  In these circumstances, that allegation was sufficient to bring his contract claim within the Court of Federal Claims' adjudicatory power.

This case invokes the distinction between dismissal for lack of subject matter jurisdiction and dismissal for

failure to state a claim upon which relief can be granted. *See Gould*, 67 F.3d at 929; *Spruill v. Merit Sys. Prot Bd.*, 978 F.2d 679, 686–87 (Fed. Cir. 1992); *also compare* Fed. Cl. Rule 12(b)(1) *with* Fed. Cl. Rule 12(b)(6). As we have stated before, a lack of subject matter jurisdiction means the trial court lacks authority to take up a case's legal and factual questions, in any manner. This is distinct from a dismissal for failure to state a claim, in which the court exercises its jurisdiction to look at the plaintiff's legal and factual assertions and concludes that the plaintiff has not made the sort of assertions that could lead to relief. *See Engage Learning, Inc. v. Salazar*, No. 2011-1007, slip op. at 11–12 (Fed. Cir. October 5, 2011) (discussing *Bell v. Hood*, 327 U.S. 678 (1946)); *see also Gould*, 67 F.3d at 929 (quoting *Do-Well Mach. Shop, Inc. v. United States*, 870 F.2d 637, 639–40 (Fed. Cir. 1989)). In our view, the record here demonstrates that the Court of Federal Claims did have subject matter jurisdiction over Mr. Brach's contract claim.

We read the *Dismissal Opinion*'s analysis of Mr. Brach's contract claim as more closely resembling an inquiry into whether a claim upon which relief can be granted has been made than an assessment of whether subject matter jurisdiction exists. Of course, the Court of Federal Claims has both the power and the obligation to dismiss cases in which no claim has been properly stated. We therefore will review the trial court's order to see if it can be affirmed as a dismissal for failure to state a claim. If, as the trial court apparently believed, Mr. Brach has failed to state a claim upon which relief can be granted, then the error in assessing subject matter jurisdiction is harmless.

In reviewing a dismissal for failure to state a claim, this court must "accept as true the complaint's undisputed factual allegations and should construe them in a light

most favorable to the plaintiff." *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009). "However, a plaintiff must plead factual allegations that support a facially 'plausible' claim to relief in order to avoid dismissal for failure to state a claim." *Id.* (citing *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 545–46 (2007)). In a contract case, this means alleging the elements of contract formation as well as authority to contract:

> The party alleging a contract must show a mutual intent to contract including an offer, an acceptance, and consideration. A contract with the United States also requires that the Government representative had actual authority to bind the United States. Anyone entering into an agreement with the Government takes the risk of accurately ascertaining the authority of the agents who purport to act for the Government, and this risk remains with the contractor even when the Government agents themselves may have been unaware of the limitations on their authority.

*Trauma Serv. Grp.*, 104 F.3d at 1325 (internal citations omitted).

In this case we agree with the Court of Federal Claims that, even being lenient in analyzing his complaint and his briefing, Mr. Brach has not carried his burden to allege facts plausibly showing the existence of a contract between himself and the IRS, obliging the IRS to pay out the claimed refund.

The burden for a taxpayer to show that the IRS has agreed to settle his tax liability and promised to make a payment is a difficult one. *See United States v. A.S.*

*Kreider Co.*, 313 U.S. 443, 448–49 (1941); *see also West Publ'g Co. Emps.' Preferred Stock Assoc. v. United States*, 198 Ct. Cl. 668, 676 (1972) ("The Supreme Court has been very strict in insisting that, before the concept of an account stated can be used, it must be shown beyond peradventure that the Government has in fact agreed with, and communicated to, the taxpayer its intention to pay a stated sum."). Reviewing the Form 4549 documents here, we see no indication of such an agreement. The documents recite Mr. Brach's claims as to his refund computations, but include no express agreement to pay. Indeed, the documents expressly state that the figures included therein are subject to subsequent review by the IRS. But even absent that notation, there is simply no express commitment in these papers that the IRS would take any action at all.

Even if such an agreement were in the Form 4549 documents, the government points out that the documents (1) are insufficient to meet the IRS's requirements for agreements of this type, and so are void, and (2) were never approved by a person authorized to bind the IRS to make such a payment. Mr. Brach cannot plausibly overcome these arguments.

The IRS's authority to settle disputed tax liabilities (including refund claims) is described in Tax Code sections 7121 and 7122 and in the Treasury Department's implementing regulations. Purported agreements that do not meet these requirements are not enforceable as contracts binding the IRS. *Botany Worsted Mills v. United States*, 278 U.S. 282, 288–89 (1929) ("We think that Congress intended by the statute to prescribe the *exclusive method* by which tax cases could be compromised, . . . and did not intend to intrust the final settlement of such matters to the informal action of subordinate officials in the Bureau [of Internal Revenue].") (emphasis added).

Mr. Brach alleges that the Form 4549 documents memorialize a binding contract. But these documents do not satisfy the regulations under which the IRS may settle a disputed tax liability. To begin with, they are not on the forms identified for such agreements. *See* Treas. Reg. 301.7121-1(d)(1) (2010) ("All closing agreements shall be executed on forms prescribed by the Internal Revenue Service."); Rev. Proc. 68-16, Sec. 6 (identifying Form 866 (Agreement As to Final Determination of Tax Liability) and Form 906 (Closing Agreement As to Final Determination Covering Specific Matters) as the appropriate forms). Neither do the Form 4549 documents include the formal legal language indicating the IRS's intent to settle that the IRS has prescribed for use in such agreements. *See* Rev. Proc. 68-16, Ex. F. What text is present in the Form 4549 documents cannot, as discussed above, plausibly be construed as creating an affirmative obligation for the IRS to pay.

Even putting aside all these objections, Mr. Brach can make no plausible showing that either Mr. Mostovy or Ms. Smith was authorized to commit the agency in the manner he suggests. The IRS's rules expressly describe the extent to which authority to enter into closing agreements may be delegated and redelegated among the IRS's employees. Delegation Order 97 (Rev. 34) (August 18, 1997), 1997 WL 33479266. Those rules do not permit delegation of such authority to revenue agents, such as Mr. Mostovy, or to supervisory revenue agents, such as Ms. Smith. The straightforward application of those rules to this case makes it beyond Mr. Brach's capacity to demonstrate that either Mr. Mostovy or Ms. Smith was authorized to enter into such an agreement—an issue on which he bears the burden of pleading and of proof. *See Trauma Serv. Group*, 104 F.2d at 1325.

For these reasons, Mr. Brach's case must be dismissed as failing to state a claim under which relief could be granted.  We thus find the Court of Federal Claims' error in analyzing subject matter jurisdiction harmless, and affirm its dismissal of the case.

**AFFIRMED.**

COSTS

No costs.