Allen **COOPER**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 11–529.

United States Court of Federal Claims.

April 5, 2012.

Allen Cooper, Texarkana, Tex., plaintiff, pro se.

David D'Alessandris, Trial Attorney, Franklin E. White, Jr., Assistant Director, Jeanne E. Davidson, Director, Commercial Litigation Branch, Tony West, Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C., for defendant.

### OPINION AND ORDER

GEORGE W. MILLER, Judge.

On August 23, 2011, plaintiff, Allen Cooper, filed a complaint in this court asserting a variety of claims against defendant, the United States (docket entry 1). In response, defendant filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC") contending that the court lacks jurisdiction to hear plaintiff's claims and, alternatively, that plaintiff has not asserted a claim upon which relief can be granted (docket entry 4, Oct. 24, 2011). Plaintiff filed a response to defendant's motion to dismiss on December 2, 2011 (docket entry 7), defendant filed a reply on December 5, 2011 (docket entry 9), and plain-

1. As explained *infra*, plaintiff's complaint is made up of a series of documents, which he has lettered. For ease of reference and citation, the

tiff filed a supplemental response on December 29, 2011 (docket entry 10). Additionally, on November 18, 2011, plaintiff filed a motion requesting release of a vessel (docket entry 5), to which defendant responded on December 1, 2011 (docket entry 6), and plaintiff replied in support of its motion on December 29, 2011 (docket entry 11).

As discussed below, the Court **GRANTS** defendant's motion to dismiss and **ORDERS** that plaintiff's claims, including plaintiff's motion for release of a vessel, shall be **DISMISSED** for lack of jurisdiction pursuant to RCFC 12(b)(1), except that the Court **FURTHER ORDERS** that plaintiff's claims that relate to his criminal trial, conviction, and imprisonment and plaintiff's allegations that the government and its agents acted in an unlawful manner in connection with the prosecution of plaintiff shall be **TRANSFERRED** to the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1631.

### I. Background

Plaintiff's complaint and subsequent filings provide little factual information and lack detail concerning plaintiff and his claims. Plaintiff currently resides at the Federal Correctional Institution in Texarkana, Texas. Compl. Doc. C at 2.[1] In 2007, plaintiff was sentenced to 121 months imprisonment following his conviction of conspiracy to possess with intent to distribute over 1000 kilograms of marijuana. *Id.* Doc. J at 20.

Plaintiff's complaint is comprised of a series of documents through which he purports to assert a variety of claims against defendant. Plaintiff has organized the documents into a list of lettered "Executed Documents." *See id.* Doc. C at 3 (providing a table of contents for the documents constituting plaintiff's complaint). It is difficult to glean the nature and relevance of plaintiff's allegations from these documents. Nonetheless, in an effort to understand plaintiff's claims, the Court describes each document in detail.[2]

Court adopts plaintiff's lettering and construes the documents as his complaint.

2. The Court does so despite the admonition that "[j]udges are not like pigs, hunting for truffles

### A. Documents A Through H

Document A is a *praecipe* to the clerk of the Court of Federal Claims directing her to "file all attached documents into the Admiralty Jurisdiction of this Court." *Id.* Doc. A at 1. It then demands that the filing fee be waived and requests that the clerk provide plaintiff with a "file stamped copy" of the documents he filed as his complaint. *Id.*

Document B, dated December 14, 2011, is titled "Letter of Advice: Important Bank and Treasury Routing Instructions." *Id.* Doc. B at 1. Signed by plaintiff, this document seems to relate to payments owed to the United States Department of the Treasury and the settlement of an account. *Id.* Doc. B at 1–2. It outlines a series of steps "required by Regulation to settle the account" and then directs that any notifications, presumably concerning the account, be mailed to plaintiff in Texarkana, Texas. *Id.*

Document C consists of a "Civil Cover Sheet" listing plaintiff and defendant as the parties to a lawsuit.[3] *Id.* Doc. C at 1. It states that the cause of action concerns "Title 46 U.S.A. Codes, Appendix, Chapter 20 §§ 742–749[sic]," describes the claim as an "[u]nlawful action and issuance of Miller Act Commercial Bonds," and demands fifteen billion dollars. *Id.* The second page of Document C, entitled "Verification," contains a statement of plaintiff's competency and veracity. *Id.* Doc. C at 2. It then notes that plaintiff is imprisoned and could not obtain the services of a notary public. *Id.* Plaintiff lists the names and signatures of three witnesses to his statement. *Id.* Doc. C at 2–3.

Document D is a "Letter of Instructions and Memorandum of Law" addressed to Timothy Geithner, Secretary of the Treasury. *Id.* Doc. D at 1. It purports to forward a bond to be used in satisfaction of the "entire amounts stated on the claims Account No. 5:06–CR–00122–S–008," *id.*, which is the docket number of plaintiff's criminal case. *See id.* Doc. J at 20. It then contains a list of instructions aimed at discharging a debt. *See id.* Doc. D at 2–3. The Memorandum of Law accompanying the letter briefly discusses House Joint Resolution 192 of 1933 and asserts that plaintiff is acting in compliance with certain regulations. *Id.* Doc. D at 3–4. It is signed by plaintiff. *Id.* Doc. D at 4.

Document E, dated December 14, 2010, is entitled "Uncitral Certified Promissory Note." *Id.* Doc. E at 1. It states that it is "tendered by the Undersigned Respondent ALLEN COOPER ... as full satisfaction of an alleged debt claimed and allegedly owed in favor of" the United States. *Id.* It states that the amount due is thirty billion dollars and that plaintiff, identified in the document as the "maker," is "discharged from liability on this alleged account" as a result the note's transmission. *Id.* Doc. E at 1–2.

Document F is a "Letter of Undertaking or Stipulation." *Id.* Doc. F at 1. In it, plaintiff states that he is "Authorized Representative, Contributing Beneficiary, Principal, Trustor, Flesh and Blood Man, upon the free soil of the Georgia Republic Land" and that he is "not an ens legis and can not communicate with any/all artificial entities nor artificial persons or fictions of law, such as UNITED STATES OF AMERICA." *Id.* (emphasis omitted). Plaintiff then states that he "undertake[s] to act as surety, to pledge and provide private bond in the amount of alleged damages caused in suit # 5:05–CR–00122–S–088/L–06–122 and any/all associated suit numbers." *Id.* (emphasis omitted). The letter then states that plaintiff is "h[e]ld[ ] ... harmless "against any and all claims made against Defendant ALLEN COOPER." *Id.* The remainder of the document contains language suggesting that plaintiff agrees to satisfy the debt of "ALLEN COOPER" resulting from any judgment against "ALLEN COOPER." *Id.* Doc. F at 1–3.

Documents G and H are nearly identical in substance, though each references a different bond number. *See id.* Doc. G; *id.* Doc. H. They contain the case caption "Allen Cooper vs. United States of America" and are designated as being filed "in Admiralty." *Id.* Doc.

---

buried in briefs." *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991).

3. Document C is a "JS 44 civil cover sheet," not the cover sheet appearing as Form 2 in the Appendix of Forms of the RCFC.

G at 1; *id.* Doc. H at 1. In the documents, plaintiff purports to underwrite "any and all obligations of performance/loss/costs sustained by the UNITED STATES OF AMERICA and the respectful citizens thereof" regarding his criminal case and cases associated with it. *Id.* Doc. G at 1 (emphasis omitted); *id.* Doc. H at 1 (emphasis omitted).

## B. Document I

In Document I—"Cause of Action Brought Under the Provisions of the Suits in Admiralty Act, the Bills of Lading Act, the Admiralty Extension Act, the Foreign Sovereign Immunity Act, the Public Vessels Act, the Tucker Act, and the Declaratory Judgment Act"—plaintiff makes a series of general allegations against the government. *See generally id.* Doc. I (capitalization omitted). He argues that, in his criminal case, the government, specifically the U.S. Attorney's Office in the Southern District of Texas, "knowingly and intentionally acted without lawful authority and subject matter jurisdiction over Plaintiff and others." *Id.* Doc. I at 1 (emphasis omitted). He also alleges that the grand jury "lacked lawful authority," that he and others involved in the case were denied due process of law under the Constitution, that the government conspired to deny plaintiff and others due process, that he suffered physical harm "[t]hrough the gross fault" of government officials, that the district court that decided plaintiff's case acted without authority and lacked jurisdiction, that the judgment against him is void, that the government waived sovereign immunity as a result of the unlawful actions of government officials, and that "[t]he Miller Act Bonds issued in the name of Plaintiff was [sic] unlawfully created without authority or written consent." *Id.* Doc. I at 2.

Throughout the remainder of the thirteen-page document, plaintiff does not present sufficient facts to support his various allegations. Rather, he states and restates various rules and legal tenets that he seems to associate with his claims.

Factually, plaintiff states that the defendants in the criminal case in which he was involved, including himself, were not permitted to make a court appearance until after the indictment—an occurrence, he claims, that "trashes the Fourth, Fifth, and Sixth Amendment substantial due process rights and/or protections of the Constitution." *Id.* Doc. I at 7. He also asserts that in his criminal trial he and the other defendants did not have the opportunity to challenge the composition of the grand jury, including the competency and qualifications of the individual jurors. *Id.* Doc. I at 8–9. He concludes the document by stating that the allegations and legal principles discussed therein "show[ ] that [he] is being held unlawfully, restrained of life, liberty and property without substantive due process of law as a direct result of an unlawful scheme or trick performed by all the government officials assigned to the above named cases." *Id.* Doc. I at 12.

As relief, plaintiff requests that the government and its officials "compensate [him] 1.6 million dollars for every day of unlawful restriction of liberty … and return all unlawful gains and revenue generated from any/all Miller Act Bonds in which was [sic] unlawfully created and transferred without written consent" and that he be immediately released from prison. *Id.* Doc. I at 13.

## C. Document J

Document J is entitled "Affidavit in Support of Tucker Action." *Id.* Doc. J at 1. In it, plaintiff repeats many of the allegations he makes in Document I and claims, *inter alia,* that he received an "inaccurate, erroneous, and materially false pre-sentence report violative of the Privacy Act." *Id.* Doc. J at 23. He discusses various topics in general terms, including separation of powers, double jeopardy, liberty and the restraint of such, sentencing and sentencing guidelines, punishments for criminal convictions, and fraudulent concealment. *See id.* Doc. J at 3–11. At one point in his discussion of these various criminal law topics, plaintiff seems to allege a violation of the Fifth Amendment's prohibition of double jeopardy stemming from the punishment he received as a result of his criminal conviction. *See id.* Doc. J at 9–10.

At the end of the document, plaintiff lists a number of allegations, some of which are the

same as those alleged in Document I. *Id.* Doc. J at 12. Additional allegations include claims that his conviction and sentence were "obtained by an unlawful act" and that his imprisonment has denied him "benefit, privileges, and rights guaranteed by law." *Id.* Plaintiff then signs his name as the affiant. *Id.* Included with Document J are three docket sheets, one of which relates to plaintiff's criminal case—case number 5:06–cr–00122–8 in the United States District Court for the Southern District of Texas.[4]

### D. Documents K and L and Affidavits

Document K—"Affidavit of Negative Averment"—reiterates many of the same allegations plaintiff made in the documents discussed above. *See id.* Doc. K at 1–2. Again he claims that government officials "knew or should have known that they violated Rule 32 of the Federal Rules of Criminal Procedure and the Privacy Act, when they prepared and authorized an erroneous, inaccurate, and materially false Pre–Sentence Report." *Id.* Doc. K at 2.

Document L is a "Motion for Discovery–Subpoena Duces Tecum" and is styled as a court filing in Admiralty, using "Allen Cooper vs. United States of America" as the case caption. *Id.* Doc. L at 1. The document begins: "COMES NOW, Allen Laveis Cooper, third party intervenor, Contributing Beneficiary, in Propia Persona by special appearance for ALLEN COOPER." *Id.* It then provides a list of four witnesses: an agent of U.S. Immigration and Customs Enforcement, a former Assistant U.S. Attorney, a former U.S. Attorney, and a current U.S. Attorney. *Id.* The document does not state why these individuals have been identified as witnesses. Plaintiff then asks that the Court "issue a Writ of Subpoena Duces Tecum" and that the "individuals listed ... bring with them the instruments and/or documents to display in Court [sic]." *Id.* Doc. L at 2. The instruments and documents to which plaintiff refers are identified as "contractual documents verifying [plaintiff's] liability via his signature," "transcripts of Federal Grand Jury minutes wherein first hand sworn testimony attests to [plaintiff's] liability ... which resulted in [plaintiff's] indictment," and "affidavits sworn under penalty of perjury and under notarial seal with first hand knowledge of [plaintiff's] liability." *Id.* The document is signed by plaintiff. *Id.*

The final two documents are titled "Affidavit of Intent" and "Affidavit of Mailing." *See id.* Aff. of Intent; *id.* Aff. of Mailing. In the Affidavit of Intent, plaintiff identifies himself as an American citizen by birth and as a member of a group of persons protected by the Declaration of Independence and the United States Constitution. *Id.* Aff. of Intent at 1. He states that his "God given constitutionally secured rights" were breached by public actors and that injury resulted. *Id.* Aff. of Intent at 2. He then states that it is his right to choose commercial law, which he explains "is supported by Jewish Commercial Law going back even before 1066 A.D.," in seeking monetary damages and that his using commercial law "was only done ... with the intent and sole purpose to redress said injury and seek monetary damages under necessity for said violations and within the commercial process used." *Id.* (capitalization omitted).

The Affidavit of Mailing is essentially a certificate of service dated August 12, 2011. Plaintiff states that he placed three copies of each document discussed above in the mail addressed to the United States Court of Federal Claims, that the original mailing was returned to him, and that he then re-sent the documents. *Id.* Aff. of Mailing at 1–2.

### E. Summary of Complaint

Taken together, these documents suggest that plaintiff is challenging his criminal trial, conviction, and imprisonment and alleging that the government and its agents acted in an unlawful manner in connection with the prosecution of plaintiff. He claims that the bad acts of government officials denied him due process of law as well as a number of other rights and privileges emanating from the Constitution, and that such acts physical-

---

4. Nothing in Document J seems to relate to the Tucker Act or Tucker Act jurisdiction, as the title of the document implies.

ly injured him. The only request for relief appears in Document I in which plaintiff states that he seeks 1.6 million dollars for each day that he has been imprisoned, release from prison, and the return of gains resulting from bonds issued in his name.

### F. Plaintiff's Motion for Release of a Vessel

In addition to his complaint and the documents comprising such, plaintiff filed a motion in which he requests the court to "cause the release of the property/vessel ALLEN COOPER Register No. 06828–073 located at FCI Texarkana in Texarkana, Texas." Pl.'s Mot. I. He requests that property associated with the "vessel" be delivered to a specified street address in Georgia. *Id.*

## II. Discussion

The United States Court of Federal Claims possesses jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491(a). *See Duncan v. United States,* 446 Fed.Appx. 303, 305 (Fed.Cir.2011). The court's subject matter jurisdiction under that statute extends to "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). ■ "The Tucker Act itself does not create a substantive cause of action...." *Fisher v. United States,* 402 F.3d 1167, 1172 (Fed.Cir.2005) (en banc portion) (citing *United States v. Mitchell,* 463 U.S. 206, 216, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)). To recover under the Tucker Act, a claimant must identify a source of substantive law that "mandates a right of recovery in damages." *Doe v. United States,* 463 F.3d 1314, 1324 (Fed. Cir.2006) (quoting *United States v. White Mountain Apache Tribe,* 537 U.S. 465, 472–73, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003)) (internal quotation marks omitted); *see Hunsaker v. United States,* 66 Fed.Cl. 129, 131 (2005) ("[A] complaint filed in the court must identify and plead an independent con-

tractual relationship, constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages in order for the court to have jurisdiction."), *aff'd per curiam,* 197 Fed.Appx. 912 (Fed.Cir.2006). In other words, plaintiff's claim must be based on a money-mandating provision to fall within this court's jurisdiction. *Doe,* 463 F.3d at 1324; *Fisher,* 402 F.3d at 1172.

When deciding a case based on a defendant's motion to dismiss for a lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), the court must determine whether it has authority to address a plaintiff's legal and factual issues. *Brach v. United States,* 443 Fed.Appx. 543, 547 (Fed.Cir.2011). In so doing, the court must assume that all of the plaintiff's undisputed factual allegations are true and draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

■ A court will "liberally" construe a *pro se* plaintiff's pleadings when assessing that plaintiff's case. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (citation omitted) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976))); *see Humphrey v. United States,* 52 Fed.Cl. 593, 595 (2002) ("[T]he Court will generously construe a *pro se* complaint...."). However, a *pro se* plaintiff "still must establish the requisite elements of his claim," including the court's subject matter jurisdiction. *Humphrey,* 52 Fed.Cl. at 595.

### A. The Court Does Not Have Jurisdiction over Plaintiff's Claims Related to His Criminal Case or Allegations of Criminal Wrongdoing

■ The Court of Federal Claims does not have jurisdiction over criminal matters. *Kania v. United States,* 650 F.2d 264, 268

(Ct.Cl.1981) ("[T]he role of the judiciary in the high function of enforcing and policing the criminal law is assigned to the courts of general jurisdiction and not to [the Court of Claims]."). To the extent that plaintiff is challenging his criminal trial, conviction, and imprisonment, the composition of the grand jury, and the conduct of the government and its officers in connection with the prosecution of plaintiff in the District Court for the Southern District of Texas, this court does not have jurisdiction over his claims because the court may review neither criminal matters, *id.*, nor the decisions of district courts. *Joshua v. United States,* 17 F.3d 378, 380 (Fed.Cir.1994) ("[T]he Court of Federal Claims does not have jurisdiction to review the decisions of district courts ... relating to proceedings before those courts."). Additionally, this court does not have jurisdiction insofar as plaintiff alleges that the wrongful and unauthorized actions of the government and its agents were criminal in nature. *Id.* at 379 ("The [C]ourt [of Federal Claims] has no jurisdiction to adjudicate any claims whatsoever under the federal criminal code ...."); *see* Compl. Doc. I at 7 ("[T]he Federal prosecution that was practiced in the above named cases amounts to a criminal conspiracy among administrative and judicial officers ...."); *id.* Doc. J at 12 (alleging violations of various provisions of Title 18 of the U.S. Code, which governs crimes and criminal procedure). Therefore, the Court may not review plaintiff's claims relating to his trial or conviction in the District Court for the Southern District of Texas, nor may it review the acts of the government and its agents to the extent plaintiff claims that they are criminal in nature.

■ Furthermore, in connection with his criminal trial, plaintiff alleges violations of his due process rights at the hands of the government and its agents. As the Federal Circuit has observed, the Court of Federal Claims does not have jurisdiction to adjudicate claims of due process violations because the due process clause is not money mandating. *Joshua,* 17 F.3d at 379 ("[T]he due process and equal protection clauses of the Fifth Amendment do not provide for the payment of monies, even if there were a violation."). Accordingly, such claims fall outside of this court's Tucker Act jurisdiction. *See Doe,* 463 F.3d at 1324 (discussing the Tucker Act's money-mandating requirement and explaining that "jurisdiction pursuant to the Tucker Act is derived from the underlying substantive law," which must mandate compensation from the government).

In addition, to the extent that defendant is correct that plaintiff's motion to release a vessel is a euphemism for his release from prison, Def.'s Resp. to Pl.'s Filing 1, the Court finds that it does not have jurisdiction for the reasons discussed above.[5]

### B. The Court Does Not Have Jurisdiction over Plaintiff's So–Called "Tucker Action" Claims

Plaintiff has submitted to the Court, as an attachment to his complaint, Document J, which is titled "Affidavit in Support of Tucker Action." However, nowhere in Document J, or elsewhere in the series of documents plaintiff filed, does plaintiff cite a substantive, money-mandating provision related to his claims that would give this court jurisdiction, specifically one that would permit him to recover $1.6 million from the government for each day he has been imprisoned. *See Doe,* 463 F.3d at 1324. Defendant points out that it is "unaware of any such money-mandating provision for the payment of damages for each day in prison" save for 28 U.S.C. § 1495, which is inapplicable because plaintiff's conviction has not been reversed. Mot. to Dismiss 5; *see* 28 U.S.C. § 1495 ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim for damages by any person unjustly convicted of an offense against the United States and imprisoned."); *Zakiya v. United*

---

**5.** Even if plaintiff's filing could be construed as a motion to release a vessel as that word is generally understood, i.e., as a type of ship or boat, *see Black's Law Dictionary* 1698–99 (9th ed. 2009), plaintiff does not request money damages in connection with this claim, nor does he identify any money-mandating provision that could be the basis for bringing such a claim within the court's jurisdiction. Accordingly, the Court does not have jurisdiction over plaintiff's request for the Court to release "the property/vessel ALLEN COOPER." Pl.'s Mot. 1.

*States,* 79 Fed.Cl. 231, 235 (2007) ("The Court of Federal Claims may hear a claim for money damages for unjust imprisonment only after a court has reversed a plaintiffs conviction on the grounds of innocence or if the President of the United States has pardoned the plaintiff." (citing *Brown v. United States,* 42 Fed.Cl. 139, 141–42 (1998); *Lott v. United States,* 11 Cl.Ct. 852, 853 (1987))).

Plaintiff cites to statutes other than the Tucker Act—namely, the Suits in Admiralty Act, the Bills of Lading Act, the Admiralty Extension Act, the Foreign Sovereign Immunities Act, the Public Vessels Act, and the Declaratory Judgment Act—but none of these is applicable to plaintiff's claims. *See* 28 U.S.C. § 2201 (granting federal courts the authority to issue declaratory judgments); 46 U.S.C. § 30101 (extending admiralty and maritime jurisdiction to "cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land"); Suits in Admiralty Act, 46 U.S.C. §§ 30901–18 (permitting a civil action in admiralty in personam against the United States in a case in which a civil action in admiralty could be brought "if a vessel were privately owned or operated, or if cargo were privately owned or possessed, or if a private person or property were involved"); Public Vessels Act, 46 U.S.C. §§ 31101–13 (providing, in part, that "a civil action in personam in admiralty may be brought . . . against the United States for (1) damages caused by a public vessel of the United States; or (2) compensation for towage and salvage services . . . rendered to a public vessel of the United States"); 49 U.S.C. §§ 80101–16 (providing the law on bills of lading "when the bill is issued by a common carrier for the transportation of goods" between specified locations); Foreign Sovereign Immunities Act of 1976, Pub.L. No. 94–583, 90 Stat. 2891 (codified in scattered sections of 28 U.S.C.) (enacting provisions "[t]o define the jurisdiction of the United States courts in suits against foreign states, the circumstances in which foreign states are immune from suit and in which execution may not be levied on their property"). Additionally, as defendant indicates, none of these statutes supports plaintiff's claims or the court's jurisdiction over such. Mot. to Dismiss 5; *see Hoag v. United States,* 99 Fed.Cl. 246, 252 (2011) (noting that the Court of Federal Claims does not have jurisdiction to issue declaratory judgments); *Williams v. United States,* 71 Fed.Cl. 194, 198 (2006) (citing *Matson Navigation Co. v. United States,* 284 U.S. 352, 359–60, 52 S.Ct. 162, 76 L.Ed. 336 (1932), for the proposition that the court does "not have jurisdiction over a contract whose subject matter [is] covered by the Suits in Admiralty Act"); *Hunsaker,* 66 Fed.Cl. at 131–32 (noting the inability of the Court of Federal Claims to address admiralty claims under the Suits in Admiralty Act and the Public Vessels Act and explaining, in response to the plaintiff's claim concerning a bill of lading, that "if a contract claim concerns admiralty, the United States District Courts have exclusive jurisdiction");[6] *Ramirez v. United States,* 36 Fed.Cl. 467, 473 (1996) (explaining that the Foreign Sovereign Immunities Act does not address the sovereign immunity of the United States).

### C. The Court Does Not Have Jurisdiction over Any Claims Related to Plaintiff's "Bonds" or Other Financial Documents

As evidenced in Part I, *supra,* plaintiff filed a number of documents with the Court that are styled as "bonds" or that otherwise purport to be financial instruments. Defendant states that these documents "appear to be based upon the theories of the 'Sovereign Citizen Movement.'" Mot. to Dismiss 5. An individual who identifies with the Sovereign Citizen Movement considers himself to be his own sovereign, not a United States citizen, and therefore "believe[s] that [he is] not subject to government authority." *Gravatt v.*

---

**6.** The Court recognizes that the Federal Acquisition Regulation contains provisions concerning bills of lading in the procurement context, *see, e.g.,* FAR 42.14, 47.1, and that this court has reviewed cases involving government bills of lading, or GBLs. *See, e.g., Central Freight Lines, Inc.* v. *United States,* 87 Fed.Cl. 104 (2009); *Inter-Coastal Xpress, Inc.* v. *United States,* 49 Fed.Cl. 531 (2001). However, nothing in plaintiff's filings supports a claim concerning bills of lading in those contexts.

*United States,* 100 Fed.Cl. 279, 282 (2011). Members of this movement think that

> [t]he federal government . . . has tricked the populace into becoming U.S. citizens by entering into "contracts" embodied in such documents as birth certificates and social security cards. With these contracts, an individual unwittingly creates a fictitious entity (i.e., the U.S. citizen) that represents, but is separate from, the real person. Through these contracts, individuals also unknowingly pledge themselves and their property, through their newly created fictitious entities, as security for the national debt in exchange for the benefits of citizenship.

*Id.* (quoting *Bryant v. Wash. Mut. Bank,* 524 F.Supp.2d 753, 758 (W.D.Va.2007)). Because of these beliefs, individuals who are part of this movement attempt to file "financing statements naming themselves as both the secured party and the debtor" wherein "the secured party's name is [typically] written using only initial capital letters and the debtor's name is written in all capital letters." *Id.* at 283 (citing *Bryant,* 524 F.Supp.2d at 759 & n. 11). This description is consistent with plaintiff's filings.

Though this theory may seem to encompass plaintiff's claims based on the content and structure of his filings, in his response to defendant's motion to dismiss, plaintiff effectively denies that this is a basis for his complaint. He states:

> The Defendant in its' [sic] motion to dismiss attempts to make fanciful assertions and allegations that the Plaintiff is a member or [sic] some "Sovereign Citizen Movement" and alleges that the Plaintiff has not stated a claim in the instant complaint. The Plaintiff has never joined, became [sic] a member or is a part of such organization, nor could be associated with such theories or analogies of such organization.

Pl.'s Resp. to Def.'s Mot. to Dismiss 4. Therefore, to the extent plaintiff attempted to proffer this theory in his complaint, he has abandoned it.

However, even if plaintiff did explicitly argue this theory of his case and, in fact, alleged jurisdiction based on contracts with the United States pursuant to the Sovereign Citizen Movement, the Court would dismiss this claim for lack of jurisdiction. Plaintiff has not alleged the existence of an express or an implied contract over which this court could have jurisdiction, nor does he make any allegations related to these "bonds" that would otherwise fall within the court's jurisdiction. *See* 28 U.S.C. § 1491(a)(1); *Gravatt,* 100 Fed.Cl. at 286–87.

### D. The Court Does Not Have Jurisdiction to Grant Habeas Corpus Relief

■ To the extent that plaintiff's claims and request to be released from prison, *see* Compl. Doc. I at 12; Pl.'s Mot. 1, can be construed as a petition for a writ of habeas corpus, the court does not have jurisdiction to hear such a request. 28 U.S.C. § 2241(a) ("Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions."); *see Ledford v. United States,* 297 F.3d 1378, 1381 (Fed. Cir.2002) ("[T]he habeas statute does not list the Court of Federal Claims among those courts empowered to grant a writ of habeas corpus. . . ."); *Risby v. United States,* Nos. 07–227C, 07–287C, 2007 WL 5173625, at *4 (Fed.Cl. Sept. 19, 2007) ("The Court of Federal Claims is not a district court and has never had jurisdiction to grant writs of habeas corpus.").

### III. Transfer

When the Court of Federal Claims determines that it does not have jurisdiction over a civil action or claim,[7] it must transfer the action or claim to a court in which the action or claim could have been brought if transfer is "in the interest of justice." 28 U.S.C. § 1631; *see id.* § 610 (including the Court of Federal Claims in the definition of "courts" for purposes of § 1631). To transfer an action or claim, a court must conclude that "(1) it lacks subject matter jurisdiction; (2) at the

---

**7.** The Court of Appeals for the Federal Circuit has held that 28 U.S.C. § 1631 allows for the transfer of less than all of the claims in a civil action. *United States v. County of Cook,* 170 F.3d 1084, 1087–89 (Fed.Cir.1999).

time the case was filed, the case could have been brought in the transferee court; and (3) transfer is in the interest of justice." *Wickliffe v. United States*, 102 Fed.Cl. 102, 110 (2011) (citing 28 U.S.C. § 1631; *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1364 n. 5, 1374 (Fed.Cir.1983) (en banc)).

■ Here, as discussed above, the Court has concluded that it lacks jurisdiction over plaintiff's claims. However, at the time this case was filed, on August 23, 2011, plaintiff could have brought his claims in the District Court for the Southern District of Texas, including specifically those claims that relate to his criminal trial, conviction, and imprisonment and his allegations that the government and its agents acted in an unlawful manner in connection with the prosecution of plaintiff. The Court concludes that it is in the interest of justice to transfer those claims, i.e., plaintiff's claims that relate to his criminal trial, conviction, and imprisonment, and his allegations that the government and its agents acted in an unlawful manner in connection with the prosecution of plaintiff. Those claims, although lacking somewhat in factual detail, appear to the Court to be "nonfrivolous and as such should be decided on the merits." *Galloway Farms, Inc. v. United States*, 834 F.2d 998, 1000 (Fed.Cir.1987) (citing *Zinger Constr. Co. v. United States*, 753 F.2d 1053, 1055 (Fed.Cir.1985)). The Court concludes that it would not be in the interest of justice to transfer any of plaintiff's other claims. Therefore, plaintiff's claims that relate to his criminal trial, conviction, and imprisonment and his allegations that the government and its agents acted in an unlawful manner in connection with the prosecution of plaintiff shall be transferred to the District Court for the Southern District of Texas.

## CONCLUSION

In view of the foregoing, the Court **GRANTS** defendant's motion to dismiss and **ORDERS** that plaintiff's claims, including plaintiff's motion for release of a vessel, shall be **DISMISSED** for lack of jurisdiction pursuant to RCFC 12(b)(1), except that the Court **FURTHER ORDERS** that plaintiff's claims that relate to his criminal trial (docket number 5:06–cr–00122–8), conviction, and imprisonment and plaintiff's allegations that the government and its agents acted in an unlawful manner in connection with the prosecution of plaintiff shall be **TRANSFERRED** to the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1631.

**IT IS SO ORDERED.**